IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARYLAND CASUALTY COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. _____ |
| | ) |
| EXPRESS PRODUCTS, INC., | ) |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, Maryland Casualty Company ("Maryland Casualty"), by its undersigned attorneys, and for its Complaint against Express Products, Inc. ("Express"), alleges as follows:

### Nature of the Action

1. Plaintiff brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, et seq., and Rule 57 of the Federal Rules of Civil Procedure, seeking a declaration that the damages sought, or which might have been obtained, in the lawsuit entitled <u>Business Pro Communications, Inc. and Tunica Pharmacy, Inc. v. Express Products, Inc.</u>, case no. 04 L 1043, Circuit Court of the Nineteenth Judicial Circuit, Lake County, Illinois (the "Underlying Lawsuit"), are not covered under general liability insurance policies issued by Maryland Casualty to Express. Maryland Casualty seeks a declaration that no coverage is available, and that Maryland Casualty has no obligation to defend or indemnify Express in connection with the claims asserted against Express in the Underlying Lawsuit.

### Jurisdiction and Venue

2. Jurisdiction over this matter is appropriate pursuant to 28 U.S.C. § 1332(a) as the matter in controversy exceeds the sum of $75,000 exclusive of interest and costs and is between citizens of different states. Venue is appropriate in this district pursuant to 28 U.S.C. § 1391(a),

as a substantial part of the events or omissions giving rise to the Underlying Lawsuit occurred in this district.

## The Parties

3. Maryland Casualty is a Maryland corporation engaged in the insurance business, with its principal place of business located in Illinois.

4. On information and belief, Express is a Pennsylvania corporation regularly transacting business in the Commonwealth of Pennsylvania, with its principal place of business located at 18 Cassell Road, Souderton, Pennsylvania 18964.

## The Policies

5. Maryland Casualty issued a precision portfolio policy to Express as a Named Insured, policy number PPS 42097015, effective as new business from April 26, 2003 to April 26, 2004 (the "2003 Policy"), which was thereafter renewed, also as policy number PPS 42097015, for the policy period from April 26, 2004 to April 26, 2005 (the "2004 Policy").

6. The 2003 Policy and 2004 Policy are collectively referred to as the "Policies." The Policies are each subject to commercial general liability ("CGL") limits of $1 million per occurrence, $1 million "personal and advertising injury," and a $2 million general aggregate.

7. True and correct copies of the 2003 Policy and 2004 Policy are attached hereto as Exhibits A and B, respectively.

## CGL Coverage A - Bodily Injury and Property Damage Liability

8. The Policies provide general liability coverage for "bodily injury" and "property damage" pursuant to the following insuring agreement:

> **SECTION I – COVERAGES**
>
> **COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

2

5095131v.1

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" and "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" and "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B or medical expenses under Coverage C.

   b. This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" or "property damage" is caused by an "occurrence" . . .; and

   (2) The "bodily injury" or "property damage" occurs during the policy period. ...

9. The Policies contain the following pertinent definitions applicable to Coverage A:

   3. "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

   \* \* \*

   13. "Occurrence" means accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

17. "Property damage" means:

    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

10. The Policies also include the following exclusion applicable to Coverage A:

This insurance does not apply to:

a. Expected or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured . . . .

11. The 2004 Policy also is subject to Endorsement 9S2324 09-02, applicable to Coverage A, entitled "Two or More Coverage Forms or Policies Issued By," which provides:

This endorsement modifies provisions in the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "occurrence," offense or claim, the Limits of Insurance under all the Coverage Forms or policies applicable to such "occurrence," offense or claim shall not exceed the highest applicable Limits of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or affiliated company specifically to apply as excess insurance over this Coverage Form.

### CGL Coverage B - Personal and Advertising Injury Liability

12. The Policies provide liability coverage for "personal and advertising injury" liability under Coverage B, pursuant to the following insuring agreement:

4

5095131v.1

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

1. **Insuring Agreement**

   a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result. But:

      (1) The amount we will pay for damages is limited as Described in Section III – Limits Of Insurance; and

      (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

      No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

   b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the 'coverage territory' during the policy period.

13. The Policies define "personal and advertising injury" as follows:

    14. "Personal and advertising injury" means injury, including consequential "bodily injury," arising out of one or more of the following offenses:

        *   *   *

        e. Publication in any manner that violates a person's right of privacy ... .

14. The Policies also contain the following exclusions applicable to Coverage B:

5

5095131v.1

This insurance does not apply to:

a. "Personal and advertising injury":

(1) Caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

\* \* \*

(3) Arising out of oral or written publication of material whose first publication took place before the beginning of the policy period;...

15. The 2004 Policy also is subject to Endorsement 9S2324 09-02, applicable to Coverage B, entitled "Two or More Coverage Forms or Policies Issued By," which provides:

This endorsement modifies provisions in the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us apply to the same "occurrence," offense or claim, the Limits of Insurance under all the Coverage Forms or policies applicable to such "occurrence," offense or claim shall not exceed the highest applicable Limits of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or affiliated company specifically to apply as excess insurance over this Coverage Form.

**The Underlying Lawsuit**

16. On or about December 30, 2004, Business Pro Communications, Inc. ("BPC") filed a Class Action Complaint against Express in the Underlying Lawsuit. On or about February 19, 2008, BPC filed a motion for leave to file a First Amended Complaint in the Underlying Lawsuit, which added Tunica Pharmacy, Inc. ("Tunica") as an additional named plaintiff (the "Underlying Complaint"). A copy of the Underlying Complaint is attached hereto as Exhibit C.

6

5095131v.1

17. The Underlying Complaint alleges that Express transmitted more than 80 unsolicited facsimile advertisements to BPC between February 27, 2002 and October 5, 2004, and an additional 31 unsolicited facsimile advertisements to Tunica between January 15, 2004 and October 12, 2004, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA").

18. The Underlying Complaint generally alleges that:

   a. This "case challenges Defendant's policy and practice of faxing unsolicited advertisements";

   b. Plaintiffs "bring this case as a class action asserting claims against Defendant under the TCPA, the common law of conversion, and the consumer protection statutes forbidding and compensating unfair business practices"; and

   c. Plaintiffs "seek an award of statutory damages for each violation of the TCPA."

19. The Underlying Complaint contains three counts, each of which is premised on the claim that Express was responsible for sending the unsolicited facsimile advertisements to BPC and Tunica, as follows:

   a. Count I: Telephone Consumer Protection Act;

   b. Count II: Conversion;

   c. Count III: Illinois Consumer Fraud and Deceptive Business Practices Act.

20. In Count I, the Underlying Complaint alleges Express violated the TCPA by sending the alleged unsolicited faxes to plaintiffs without first obtaining "prior express permission or invitation." Count I seeks a judgment for $500.00 in statutory damages for each violation of the TCPA, injunctive relief and costs.

21. Count I is asserted on behalf of a class defined as "all persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of

material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes, and (4) with whom no established business relationship existed."

22. In Count II, the Underlying Complaint alleges that Express' improper and unlawful sending of unsolicited faxes constitutes common law conversion. Count II further alleges "Defendant knew or should have known that its misappropriation of paper, toner and employee time ... was wrongful and without authorization." Count II seeks an award of "appropriate damages" and "costs of suit" but in no event more than $75,000.00 to any individual class member.

23. Count II is asserted on behalf of a class defined as "all persons who (1) on or after a date five years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services by or on behalf of Defendant, (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes, and (4) with whom no established business relationship existed."

24. Count III of the Underlying Complaint alleges unsolicited advertising is an "unscrupulous business practice" which is contrary to the TCPA and Illinois law. Count III seeks injunctive relief, a damages award, attorneys' fees and costs of suit, but in no event "more than $75,000.00 to any individual class member".

25. Count III is asserted on behalf of a class defined as "all persons in Illinois who (1) on or after a date three years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or services

by or on behalf of Defendant, (3) with respect to whom Defendant did not have prior express permission or invitation for the sending of such faxes, and (4) with whom no established business relationship existed."

### Insurers' Response

26. By letter dated September 14, 2005, Maryland Casualty advised Express that Maryland Casualty likely does not owe an obligation to defend or indemnify Express under the Policies in connection with the allegations contained in the Underlying Lawsuit. Maryland Casualty further agreed to provide a defense to Express in connection with the Underlying Lawsuit, subject to a full reservation of rights.

### Count I
### (Declaratory Judgment)
### *(No Coverage For The Claims Alleged In The Underlying Lawsuit)*
### *(No "Bodily Injury" Or "Property Damage" Caused By An "Occurrence")*
### *(Expected or Intended Injury Exclusion)*

27. Plaintiffs reincorporate by reference paragraphs 1 through 26 above, as though fully restated herein, as paragraph 27.

28. The Policies define an "occurrence" as follows:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

29. The Policies define "bodily injury" as follows:

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death resulting from bodily injury, sickness or disease.

30. The Policies define "property damage" as follows:

> 17. "Property Damage" means:
>
>    a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be

      deemed to occur at the time of the physical injury that caused it; or

  b. Loss of use of tangible property that is not physically injured. All such loss shall be deemed to occur at the time of the "occurrence" that caused it.

31. The Policies thus provide coverage under Coverage A only for "damages because of 'bodily injury' and 'property damage'" which are "caused by an 'occurrence'" that "occurs during the policy period."

32. The Underlying Complaint does not allege an "accident." As alleged in the Underlying Lawsuit, sending a fax advertisement is a volitional, willful and intentional act. The alleged conduct which forms the basis for the damages alleged in the Underlying Lawsuit, therefore, is not an accident and cannot result in a covered "occurrence."

33. Even assuming the Underlying Lawsuit somehow is deemed to seek damages for an "occurrence," the Underlying Complaint does not contain factual allegations of covered "bodily injury" and "property damage" as those terms are defined in the Policies. Thus, recovery is not sought in the Underlying Lawsuit for damages because of "bodily injury" or "property damage." Accordingly, the Policies do not provide coverage for the allegations contained in the Underlying Complaint.

34. Further, as alleged in the Underlying Complaint, sending a fax advertisement is a volitional, willful and intentional act, the result of which also is intended or expected. The alleged conduct which forms the basis for the damages alleged in the Underlying Complaint, therefore, falls within the exclusion for expected or intended injury. Even assuming coverage otherwise is properly invoked under Coverage A of the Policies, therefore, coverage would be excluded by the expected or intended injury exclusion.

5095131v.1

35. As a result, Maryland Casualty has no duty to defend or indemnify Express under Coverage A of the Policies in connection with the Underlying Lawsuit.

36. By reason of the foregoing, there exists an actual and justiciable controversy among the parties concerning their respective rights and duties and obligations under and pursuant to the Policies. Maryland Casualty contends there is no obligation to defend or indemnify Express in connection with the claims asserted in the Underlying Lawsuit based on the terms of the Policies and applicable law. On information and belief, Express contends duties to defend and indemnify exist under the Policies for the claims asserted against Express in the Underlying Lawsuit.

37. Maryland Casualty has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with the Policies. A judicial declaration is necessary and appropriate at this time so that Maryland Casualty may ascertain its rights and duties with respect to defense and indemnity under the Policies for the Underlying Lawsuit.

38. This Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to the issues raised by this Complaint and to declare that Maryland Casualty has no duty to defend or indemnify Express with respect to the Underlying Lawsuit.

**WHEREFORE**, Plaintiff Maryland Casualty Company respectfully requests entry of judgment on Count I of its Complaint as follows:

(a) For a declaration that based on the terms of the Policies and applicable law, Maryland Casualty has no duty to defend Express with respect to the Underlying Lawsuit; and

(b)  For a declaration that based on the terms of the Policies and applicable law, Maryland Casualty has no duty to indemnify Express with respect to the Underlying Lawsuit; and

(c)  For any further relief which this Court deems to be just and proper.

### Count II
### (Declaratory Judgment)
*(No Coverage For The Claims Alleged In The Underlying Lawsuit)*
*(No "Personal and Advertising Injury" Caused By An "Offense")*
<u>*(Knowing Violation Exclusion)*</u>

39.  Plaintiffs reincorporate by reference paragraphs 1 through 38 above, as though fully restated herein, as paragraph 39.

40.  The Policies provide coverage under Coverage B only for "damages because of 'personal and advertising injury'" which is "caused by an offense" and "during the policy period."

41.  The Policies define "personal and advertising injury" to include "Publication in any manner that violates a person's right of privacy"

42.  The Underlying Complaint does not allege or seek to recover for any "personal and advertising injury" caused by an "offense." Accordingly, Coverage B of the Policies does not provide coverage for the allegations contained in the Underlying Complaint, including any duty to defend or duty to indemnify.

43.  The Policies also contain the following exclusion applicable to Coverage B:

> "Personal and advertising injury" ... caused by or at the direction of the insured with knowledge that the act would violate the rights of another and would inflict "personal and advertising injury"

44.  As alleged in the Underlying Lawsuit, sending a fax advertisement is a volitional, willful and intentional act, the result of which also is intended or expected. The alleged conduct

5095131v.1

which forms the basis for the damages alleged in the Underlying Complaint thus falls within the scope of this exclusion. Even assuming coverage otherwise is properly invoked under Coverage B of the Policies, therefore, coverage would be excluded.

45. As a result, Maryland Casualty has no duty to defend or to indemnify Express under Coverage B of the Policies in connection with the Underlying Lawsuit.

46. By reason of the foregoing, there exists an actual and justiciable controversy among the parties concerning their respective rights and duties and obligations under and pursuant to Coverage B of the Policies. Maryland Casualty contends there is no coverage for the claims asserted against Express in the Underlying Lawsuit based on the terms of the Policies and applicable law. On information and belief, Express contends coverage exists under Coverage B of the Policies for the claims asserted against Express in the Underlying Lawsuit.

47. Maryland Casualty has no adequate remedy at law and, therefore, desires a judicial determination of its rights and duties in accordance with Coverage B of the Policies. A judicial declaration is necessary and appropriate at this time so that Maryland Casualty may ascertain its rights and duties with respect to defense and indemnity under the Policies for the Underlying Lawsuit.

48. This Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised by this Complaint and to declare Maryland Casualty has no duty to defend Express with respect to the Underlying Lawsuit and that the allegations of the Underlying Lawsuit are not covered by the Policies.

**WHEREFORE**, Plaintiff Maryland Casualty Company respectfully requests entry of judgment on Count II of its Complaint as follows:

(a) For a declaration that based on the terms of the Policies and applicable law, Maryland Casualty has no duty to defend Express with respect to the Underlying Lawsuit; and

(b) For a declaration that based on the terms of the Policies and applicable law, Maryland Casualty has no duty to indemnify Express with respect to the Underlying Lawsuit; and

(c) For any further relief which this Court deems to be just and proper.

## Count III
### (Declaratory Judgment)
### *(Two or More Coverage Forms Endorsement)*

49. Plaintiffs reincorporate by reference paragraphs 1 through 48 above, as though fully restated herein, as paragraph 49.

50. The Underlying Complaint specifically alleges that Express transmitted more than 80 separate facsimile advertisements to BPC between February 27, 2002 and October 5, 2004, and an additional 31 separate facsimile advertisements to Tunica between January 15, 2004 and October 12, 2004.

51. In addition, the Underlying Complaint seeks to recover on behalf of a putative class alleged to include all persons who were sent an unsolicited advertising fax by or on behalf of Express during a class period of four years prior to the filing of the Underlying Lawsuit (Count I), five years prior to the filing of the Underlying Lawsuit (Count II) and three years prior to the filing of the Underlying Lawsuit (Count III).

52. As such, the period in which the alleged conduct took place, as alleged in the Underlying Complaint, extends over more than one policy period.

5095131v.1

53. In that regard, the Policies are subject to the "Two or More Coverage Forms or Policies Issued By" Endorsement. Thus, to the extent that the Underlying Lawsuit is deemed to allege damages covered under either Coverage A or Coverage B of the Policies, which are not otherwise excluded, the Limits of Insurance under all the Policies applicable to such damages cannot exceed the highest applicable Limits of Insurance under any one of the Policies, in accordance with the "Two or More Coverage Forms" Endorsement.

54. By reason of the foregoing, there exists an actual and justiciable controversy among the parties concerning their respective rights and duties and obligations under the Policies. Even to the extent that the Underlying Lawsuit is deemed to allege damages covered under either Coverage A or Coverage B of the Policies, which are not otherwise excluded, Maryland Casualty contends the Limits of Insurance under all of the Policies applicable to any covered damages in the Underlying Lawsuit cannot exceed the highest applicable Limits of Insurance under any one of the Policies, based on the terms of the Policies, and applicable law. On information and belief, Express contends that the Limits of Insurance under the Policies applicable to any covered damages in the Underlying Lawsuit can exceed the highest applicable Limits of Insurance under any one of the Policies.

55. Maryland Casualty has no adequate remedy at law and, therefore, desires a judicial determination of their rights and duties in accordance with the Policies. A judicial declaration is necessary and appropriate at this time so that Maryland Casualty may ascertain its rights and duties with respect to defense and indemnity under the Policies for the Underlying Lawsuit.

56. This Court is vested with the power in the instant case to declare and adjudicate the rights and other legal relationships of the parties to this action with reference to issues raised

5095131v.1

by this Complaint and to declare that the Limits of Insurance under all of the Policies applicable to any covered damages in the Underlying Lawsuit cannot exceed the highest applicable Limits of Insurance under any one of the Policies, based on the terms of the Policies and applicable law.

**WHEREFORE**, Plaintiff Maryland Casualty Company respectfully request entry of judgment on Count IV of their Complaint as follows:

(a) For a declaration that based on the terms of the Policies and applicable law, even if the Underlying Lawsuit is deemed to allege damages covered under either Coverage A or Coverage B of the Policies, which are not otherwise excluded, the Limits of Insurance under all of the Policies applicable to any covered damages in the Underlying Lawsuit cannot exceed the highest applicable Limits of Insurance under any one of the Policies; and

(b) For any further relief which this Court deems to be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury on all issues so triable.

Dated this 27th day of February, 2009.

Respectfully submitted,

By: _____
Lawrence J. Bistany
Celestine M. Montague
White and Williams LLP
1800 One Liberty Place
Philadelphia, PA 19103
215/864-6306/6366
bistanyl@whiteandwilliams.com
montaguec@whiteandwilliams.com

*Attorneys for Plaintiff, Maryland Casualty Company*

***Of Counsel:***
Jeffrey A. Berman
Meckler Bulger Tilson Marick & Pearson LLP
123 North Wacker Drive
Suite 1800
Chicago, IL 60606
Phone:  312/474-7900
Fax:      312/474-7989